```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


_____
                              )
UNITED STATES OF AMERICA      )
                              )
                              )
     v.                       )    No. 08-CR-10241-PBS
                              )
                              )
CARLOS RODRIGUEZ,             )
          Defendant.          )
_____)
```

**MEMORANDUM AND ORDER**

November 4, 2009

Saris, U.S.D.J.

## I. Introduction

Pursuant to Fed. R. Crim. P. 33, Defendant Carlos Rodriguez moved for a new trial on the ground that a pocket-sized copy of the New Testament was seen in the jury room after the verdict was delivered.  In the alternative, Defendant requested that the Court recall each juror for individual voir dire.  The Court held a hearing at which the foreperson testified that there was no discussion of the Bible during jury deliberations.  After hearing and review of the briefs, the Court **DENIES** Defendant's Motion for a New Trial and for further questioning of the jurors.

## II. Background

Mr. Rodriguez was charged in a one-count indictment with being a felon in possession of a firearm and ammunition in

violation of 18 U.S.C. § 922(g).  Trial in the case lasted from September 21, 2009, until September 29, when the Court instructed the jury.  The jury deliberated through the afternoon of September 29 and all day on September 30.  At 11:36 a.m. on October 1, the jury submitted a note asking how it could "determine if we are a 'hung jury'?"  (Docket No. 49.)  In a written response, the Court instructed the jurors to continue deliberating, and told them that it would issue further instruction if the jury was unable to make progress.  (Id.)  At 3:11 p.m. that same day, the Court received a second note from the jury, stating, "We cannot reach a unanimous decision and we don't know that we will.  How do we proceed?"  (Id. at 2.)  The Court dismissed the jurors for the day, and when they returned at 9:00 a.m. the following day, gave an Allen charge directing them to continue deliberating.  The jury returned with a guilty verdict at 12:20 p.m. that day.

The Court went into the jury room to thank the jury. Afterwards, the law clerks informed the Court they saw a pocket-sized New Testament on a juror notebook on the table.  At 3:00 p.m., the Court informed the parties:

> After we returned from thanking the jury, my law clerks told me they saw a pocked-sized New Testament on top of a juror notebook on the table in the jury room.  While I did not see it, and no juror mentioned it, I bring this matter to your attention for whatever steps, if any, you think are appropriate.

(Docket No. 45.)  As a result, Defendant filed this motion for a

-2-

new trial asserting impermissible external influence on the jury deliberations. The defense also requested that the Court conduct an individual voir dire of each juror to assess any improper influence by a Bible in the jury room.

The Court held a hearing on the motion on October 23, 2009, at which the jury foreperson identified the juror who owned the Bible and explained that the owner had brought it each day. (Tr. of Mot. Hr'g 17, October 23, 2009.) The foreperson said that the juror in question had a small handbag and preferred to carry the Bible. (Id.) The foreperson stated the Bible played no role in the jury's deliberations:

> THE COURT: Did the issue of the Bible come up at all?
>
> JUROR: No.
>
> THE COURT: Did you discuss it at all?
>
> JUROR: No.
>
> THE COURT: Did [the juror who had the Bible] mention it at all?
>
> JUROR: No. I mean, her and I had, like, conversations on the side. . . . but it wasn't pertaining to the case or anything, it was just side conversation before the morning started or whatever. But never came up during deliberations or anything.
>
> THE COURT: Was she reading it during deliberations?
>
> JUROR: No.

(Id. at 13-14.) The foreperson testified further that she sat next to the juror in question during deliberations and whenever they were in the jury room. (Id. at 14.) The foreperson and the

-3-

juror had casual conversation about the Bible before the jury formally convened one day:

> JUROR: It was -- during the trial, it was more like whoever was early in the jury room, we would just have general conversation, and somehow it came up between her and I that my aunt was Christian, you know, this or that. . . .
>
> MR. CABELL: I just want to clarify to make sure I understood. You said the conversations you had in the morning were that your aunt was Christian?
>
> JUROR: Yes, my husband's aunt. My husband's aunt was Christian, is Christian. And she asked me, must have been something I said in passing or whatever, she asked me the next day something about are you Christian or do you read Christian passages? And I said no, my husband's aunt is. I know that she -- the last day of deliberations she was going to be late for Bible study, and that was it.
>
> MR. SINNIS: Was that an issue for her?
>
> JUROR: No. She had already called them that morning and said she was not going to make it. She never seemed like it was going to be a problem at all.

(Id. at 16-17.)

### III. Discussion

Fed. R. Crim. P. 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The First Circuit has held, "Under Rule 33, a new trial 'in the interests of justice' may be granted liberally." Conley v. United States, 323 F.3d 7, 10 (1st Cir. 2003) (en banc).

Fed. R. Evid. 606(b) codifies the well-established common law principle prohibiting the admission of juror testimony to

impeach a verdict.  The Rule provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  But a juror may testify about
>
> (1) whether extraneous prejudicial information was improperly brought to the jury's attention,
>
> (2) whether any outside influence was improperly brought to bear upon any juror, or
>
> (3) whether there was a mistake in entering the verdict on the jury form.  A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b).  Assessing this provision in Tanner v. United States, 483 U.S. 107, 117-20 (1987), the Supreme Court emphasized the policy considerations that shield jury deliberations from scrutiny.  It explained, however, that "[t]he Court's holdings requiring an evidentiary hearing where extrinsic influence . . . have tainted the deliberations do not detract from, but rather harmonize with, the weighty government interest in insulating the jury's deliberative process." Id. at 120.

"Courts generally should be hesitant to haul jurors in after they have reached a verdict . . . to probe for potential instances of bias, misconduct, or extraneous influence." United States v. Connolly, 341 F.3d 16, 34 (1st Cir. 2003) (quoting Neron v. Tierney, 841 F.2d 1197, 1205 (1st Cir. 1988).

Additionally, "[a] court should only conduct such an inquiry when . . . 'there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial . . . .'" Id. (quoting United States v. Moon, 718 F.2d 1210, 1234 (2d Cir. 1983)).

The key case in this circuit addressing the significance of a Bible in the jury room is United States v. Lara-Ramirez, 519 F.3d 76 (1st Cir. 2008), on which both parties rely.  There, the Court reversed a district court's decision to declare a mistrial after the court reporter "saw a huge Bible, not the kind you carry in your pocket like a daily inspiration," in the jury room during deliberations.  519 F.3d at 79.  The jury had reported itself deadlocked, but an Allen charge had not yet been given. The trial judge questioned the jury foreperson, who confirmed that a juror had urged the other jurors to hear the facts, but "also consider what God says in the Bible, [or] something like that," during deliberations.  Id. at 80.  The judge considered several courses of action proposed by defense counsel, like individual juror voir dire or a cautionary instruction, before deciding that "the cat is out of the bag" and declaring a mistrial.  Id.  The First Circuit reversed, emphasizing the role of mistrial as "a remedy of last resort" and declaring the trial judge's inquiry into the matter insufficient to justify it.  Id. at 86.  The Court reasoned that before declaring a mistrial, the

trial court must find "that the Bible had played a central role in deliberations and that individual jurors would not have been able to disregard its influence." Id. at 87-88. The Court rejected a "per se rule that the presence of the Bible in the jury room, combined with the mention of it by a juror during deliberations, produces a taint so egregious that it can not be cured." Id. at 88. It was a "legal misconception" to treat the "Bible in the jury room as qualitatively different from other types of extraneous materials or information that may taint a jury's deliberations." Id.

In collecting relevant cases, the Fifth Circuit stated, "Most circuits have ruled that when a Bible itself enters a jury room, the jury has been exposed to an external influence." Oliver v. Quarterman, 541 F.3d 329, 339 (5th Cir. 2008). However, most habeas courts have denied relief even when the Bible was used during deliberations if there was a finding of no prejudice. See id. at 336-39 (finding on collateral review that, where several jurors read aloud Bible passages factually relevant to the case, the jury's consideration of the Bible "crossed an important line" and deprived defendant of his Sixth Amendment rights, but concluding that defendant did not rebut the presumption of correctness of the state court's finding that the Bible did not prejudice the jury decision); Fields v. Brown, 503 F.3d 755, 777, 780-81 (9th Cir. 2007) (en banc) (denying habeas

Case 1:08-cr-10241-PBS   Document 61-2   Filed 11/05/09   Page 8 of 9

relief where the foreperson consulted the Bible in generating a list with points both "for" and "against" the use of the death penalty, which he then used in deliberations); McNair v. Campbell, 416 F.3d 1291, 1307-09 (11th Cir. 2005) (finding on habeas review that the foreperson's reading aloud from Bible and leading jurors in prayer during deliberations amounted to consideration of extrinsic evidence in violation of the Sixth Amendment, but concluding that defendant failed to rebut the state court's finding that the verdict was not prejudiced).  But cf. Jones v. Kemp, 706 F. Supp. 1534, 1560 (N.D. Ga. 1989) (granting a writ of habeas corpus based on implied judicial sanction where juror had requested court's permission to bring a Bible into the jury room, but distinguishing the situation of jurors merely possessing Bibles, even in the jury room, for personal inspiration or independent spiritual guidance).

Defendant argues that the Court's investigation into this matter by questioning the foreperson is insufficient.  In Lara-Ramirez, the First Circuit did call the trial judge's decision to interview only the jury foreperson inadequate.  519 F.3d at 89.  However, in that case the foreperson had stated that the Bible was actually used during deliberations to make a point.  Here, though, the foreperson provided no evidence that the Bible was discussed at all during deliberations.  There is no proscription on jurors reading the Bible before or after deliberations, or

-8-

having a personal Bible in their possession.  See Robinson v. Polk, 444 F.3d 225, 227 (4th Cir. 2006) (per curiam) (Wilkinson, J., concurring) ("The simple presence of a Bible in the jury room would not breach constitutional norms.").  Where, as here, there is no evidence of any extraneous influence on deliberations, further inquiry would require hauling jurors back into court for the purposes of investigating the possibility of misconduct that is, at best, wholly speculative.  In my discretion, I decline to do so.

## ORDER

Defendant's Motion for a New Trial [Docket No. 48] is **DENIED**.

                                            **S/PATTI B. SARIS**

                                            United States District Judge