```
                       UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS


_____
                                )
UNITED STATES OF AMERICA        )
                                )
                                )
     v.                         )     No. 08-CR-10241-PBS
                                )
                                )
CARLOS RODRIGUEZ,               )
          Defendant.            )
_____)
```

**MEMORANDUM AND ORDER**

November 18, 2009

Saris, U.S.D.J.

## I.   INTRODUCTION

Defendant Carlos Rodriguez has filed a second motion for a new trial pursuant to Fed. R. Crim. P. 33, claiming that the government violated his Fifth Amendment rights by arguing that he "acted like a guilty man" in not making statements to the police on or after September 24, 2006.  Additionally, Defendant argues that the prosecutor improperly vouched for the government's case in rebuttal.  After review of the briefs, the Court **DENIES** Defendant's Motion for a New Trial on both grounds.

## II.   BACKGROUND

Mr. Rodriguez was charged in a one-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g).  The charge arose from the

discovery by Methuen police on September 24, 2006, of a loaded AK-47 assault rifle in the passenger seat of a car registered to Melodee Sweeney, Defendant's then-girlfriend.  Trial in the case lasted from September 21, 2009, until September 29.  At trial, the government elicited testimony from several Methuen police officers establishing that (1) the defendant was in the area shortly after officers discovered the gun; (2) the defendant spoke with the officers; (3) the defendant lied to the officers regarding his name, date of birth, address, and social security number; (4) officers learned his true identity later that evening and considered him a suspect; (5) officers told Melodee Sweeney the following day that they knew the defendant had lied to them and that he was a suspect; and (6) the defendant later fled to Rochester, New York, and was arrested there in December 2007, more than a year after police discovered the gun.

   The government also introduced the testimony of Ms. Sweeney and Joseph Garofalo, an employee of a Dunkin' Donuts where the defendant was seen prior to being stopped by the police on September 24, 2006.  Both of those witnesses testified to a phone call the defendant made to Ms. Sweeney while at the Dunkin' Donuts, urging her to report her car stolen because the police had discovered the AK-47.  Defense counsel cross-examined both Ms. Sweeney and Mr. Garofalo vigorously about their histories of drug use and inconsistencies in their statements.

Closing arguments took place on September 29, 2009.  During the course of a nearly forty-minute closing, the government offered a nine-point analysis in support of its theory that Mr. Rodriguez possessed the gun and, upon learning that he was a suspect, fled to New York.  The ninth point in this chain of reasoning consisted of the following remarks:

> Nine, in light of all of this, how did [Mr. Rodriguez] behave?  He acted like a guilty man.  What did he do?  Did he come forward and say, "You've got the wrong person.  I had nothing to do with it"?  Did he come forward and say, "Look, all right, I lied when you stopped me, but here's the reason why.  Here's what I was really concerned about"?  Did he do anything like that?  No.

(Trial Tr. 14-15, Sept. 29, 2009.)  Defense counsel objected based on the Fifth Amendment immediately and the following colloquy ensued:

> SIDE-BAR CONFERENCE:
>
> MR. FICK: His entire argument seems directed to suggest that Mr. Rodriguez has an obligation to make a statement.
>
> THE COURT: What cautionary statement should I make?
>
> MR. SINNIS: That he has no obligation to come forward.  He has a constitutional right to remain silent, he doesn't have to assist in the investigation, something along those lines.
>
> MR. CABELL: I'm going to say that right now.
>
> (End of side-bar conference)
>
> THE COURT: I am striking the line of argument that was just made.  I want to remind you that, and I'll be talking about it again, but a defendant has a Fifth Amendment right here.  We talked about that on the

> first day of trial.  A defendant has no obligation
> whatsoever to say anything at all, and it is improper
> to consider that at all in the jury deliberation room.
> And so whatever he did that night, he had no obligation
> to say anything or do anything.

(Id. at 15-16.)  Defendant did not object to this instruction and did not move for a mistrial at any point prior to the verdict.

During Defendant's closing argument, counsel stated:

> So in the end, the only evidence linking Mr. Rodriguez
> to that car and that gun comes from . . . Mr. Garofalo
> . . . and primarily Ms. Sweeney.  These are the two
> people you would have to trust before you could find
> Mr. Rodriguez guilty beyond a reasonable doubt.
>
> So ask yourselves this: Would you trust either of them
> to take care of your kids?  Would you trust either of
> them to back you up in an important task at work?
> Would you trust either of them to even, like, tell you
> what your boss had instructed you that you should be
> doing?  I think it's probably likely, isn't it, that
> you probably wouldn't even trust these people to walk
> your dog? . . . If you have to even question or debate
> the credibility of these two people, you've got the
> answer already, don't you?  That's reasonable doubt.

(Id. at 51-52.)  Responding to these rhetorical questions in rebuttal, the government stated:

> [L]et me begin by posing a rhetorical question that
> follows on what Mr. Fick just asked of you.  Would you
> trust me to watch your kids?  You don't know me from
> Adam.  I may look like a respectable person, but that
> doesn't mean you're all of a sudden going to welcome me
> into your household and entrust me with things that are
> important to you.

(Id. at 52.)  Defendant did not object to this comment, but argues now that it constituted improper vouching for the government's case.

In its charge to the jury, the Court instructed the jury (1)

-4-

that arguments of counsel in opening and closing are not evidence to be considered by the jury; and (2) that the defendant had no obligation to testify, and that no adverse inference could be drawn from his decision not to do so.  Additionally, the Court issued specific instructions with regard to consciousness of guilt from flight:

> If the government persuades you that Mr. Rodriguez fled after he knew he was to be accused of a crime, you may take that fact into account and consider whether it tends to show that the defendant believed he was guilty. . . .
>
> You must use care, however, before you draw an inference of guilt from the evidence of what I call here "consciousness of guilt." . . . [T]here are numerous reasons why an innocent person might do an act that appears consistent with consciousness of guilt . . . and therefore such acts do not necessarily reflect or show feelings of guilt.  Even if such acts do demonstrate feelings of guilt, these feelings do not necessarily mean that the person who has them is guilty.  That is for you to determine.
>
> However, you may not infer on the basis of flight alone that Mr. Rodriguez is in fact guilty of the crime with which he is charged.

(Jury Charge 24, Sept. 29, 2009.)  The Court also instructed the jury regarding "consciousness of innocence":

> Evidence that the defendant did not flee from the crime scene, but instead approached the police, may be considered . . . as evidence that the defendant was conscious of his innocence . . . . [which] may in turn be considered . . . as evidence that the defendant is not guilty. . . . Regardless of whether or not you find that there is evidence of consciousness of innocence in this case, the burden is always on the government to prove the defendant's guilt beyond a reasonable doubt.

(Id. at 25.)

The jury deliberated through the afternoon of September 29 and all day on September 30.  At 11:36 a.m. on October 1, the jury submitted a note asking how it could "determine if we are a 'hung jury'?"  (Docket No. 49.)  In a written response, the Court instructed the jurors to continue deliberating, and told them that it would issue further instruction if the jury was unable to make progress.  (Id.)  At 3:11 p.m. that same day, the Court received another note from the jury, stating, "[W]e cannot reach a unanimous decision and we don't know that we will.  How do we proceed?"  (Id. at 2.)  The Court dismissed the jurors for the day, and when they returned at 9:00 a.m. the following day, gave an Allen charge directing them to continue deliberating.  The jury returned with a guilty verdict at 12:20 p.m. that day.  Defendant thereafter filed this timely motion.

### III.  LEGAL STANDARD

Fed. R. Crim. P. 33 provides, "Upon the defendant's motion, the court may vacate any judgement and grant a new trial if the interest of justice so requires."  However, "[t]he remedy . . . is sparingly used, and then only where there would be a miscarriage of justice . . . and where the evidence preponderates heavily against the verdict."  United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001) (internal quotations omitted).

**IV.   DISCUSSION**

**1.   Fifth Amendment**

Defendant claims that the prosecutor commented improperly on his silence, in violation of his Fifth Amendment rights.  The government argues that the Fifth Amendment is not implicated where, as here, the prosecutor comments on a defendant's pre-arrest, pre-Miranda silence.

The "Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  Griffin v. California, 380 U.S. 609, 615 (1965); see also United States v. Manqual-Garcia, 505 F.3d 1, 13 (1st Cir. 2007) (quoting Griffin); see generally Doyle v. Ohio, 426 U.S. 610, 619-20 (1976) (holding that a defendant's post-arrest silence after receiving Miranda warnings cannot be used to impeach him at trial).  The Fifth Amendment privilege "may be asserted by a suspect who is questioned during the investigation of a crime."  Coppola v. Powell, 878 F.2d 1562, 1565 (1st Cir. 1989).

The Supreme Court has held that use of pre-arrest silence to impeach a defendant who testifies at trial does not violate the Constitution.  See Jenkins v. Anderson, 447 U.S. 231, 240 (1980).  It explained that inquiry into prior silence was proper because the immunity from giving testimony is one that the defendant may waive by offering himself as a witness.  Id. at 235.  However, it

noted, "Our decision today does not consider whether or under what circumstances prearrest silence may be protected by the Fifth Amendment." Id. at 236 n.2.

In an analogous situation, the First Circuit held that a defendant's constitutional rights were violated when the prosecutor in his case-in-chief used his statement during a police interrogation that he was not going to confess. Coppola, 878 F.2d at 1569. In United States v. Andujar-Basco, 488 F.3d 549, 555 (1st Cir. 2007), the First Circuit restated the Coppola ruling: "This court has further held that a defendant's actual statement asserting his Miranda rights, even when uttered before a Miranda warning has been delivered, is not admissible as substantive evidence of the defendant's guilt." The courts of appeal are split as to "whether, under some circumstances, the Fifth Amendment privilege against self-incrimination prevents the government from using a suspect's pre-arrest silence as substantive evidence of guilt." United States v. McCann, 366 F.3d 46, 56-57 (1st Cir. 2004) (identifying the circuit split but resolving the case on other grounds), vacated and remanded on other grounds, 543 U.S. 1104 (2005); see generally, Christopher Machiaroli, To Speak or Not to Speak: Can Pre-Miranda Silence be Used as Substantive Evidence of Guilt?, 33 Champion 14 (2009) (collecting cases).

While the jurisprudence nationwide and in this circuit is unsettled on whether the use of pre-Miranda silence as substantial evidence of guilt violates a defendant's Fifth Amendment rights, the prosecutor's comment urging the jury to draw an adverse inference because Defendant did not affirmatively speak up to protest his innocence when he heard he was a suspect likely violated his Fifth Amendment rights.  While courts have cautiously permitted consciousness of guilt instructions based on flight, they have never permitted an adverse inference from a defendant's failure to participate proactively in an investigation when he learns he is a suspect.  See Coppola, 878 F.2d at 1566 (rejecting a "rule of evidence whereby an inference of consciousness of guilt will trump a Fifth Amendment claim of the privilege.  Any refusal to speak, no matter how couched, in the face of police interrogation, raises an inference that the person being questioned probably has something to hide.").

Even if these comments were improper, the Court must next determine whether they were harmless.  The First Circuit has "fashioned a three prong test in examining whether the prosecution's misconduct 'so poisoned the well' that the trial's outcome was likely affected."  United States v. Hodge-Balwing, 952 F.2d 607, 610-11 (1st Cir. 1991) (holding no reversible error present where court issued prompt curative instruction in response to prosecutor's comment that defendant had not protested

or offered explanation when confronted with illegal narcotics found in his luggage).  A court must examine "(1) whether the prosecutor's conduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case."  Id. at 610; see also United States v. Ayala-Garcia, 574 F.3d 5, 19 (1st Cir. 2009) (considering such factors as "'the severity of the misconduct; whether it was deliberate or accidental; the context in which it occurred; whether the judge gave any curative instructions and their likely effect; and the strength of the evidence against the defendant.'" (quoting United States v. Mooney, 315 F.3d 54, 60 (1st Cir. 2002))).

An analysis of these factors militates against grant of the motion for a new trial.  With respect to the first factor, the prosecutor's misconduct was isolated and in a difficult, unsettled corner of the law, which has generated a circuit split and unclear guidance from this circuit.  As such, the misstatement was not egregious.

Under the second factor, the defense objected to the closing argument and the Court issued a strong curative instruction immediately.  Defendant did not object to that instruction.

Finally, the evidence against the defendant was strong.  While defendants fairly paint Melodee Sweeney, defendant's

-10-

girlfriend, as a serial liar, Joseph Garofalo, the Dunkin' Donuts employee who had little motive to lie on the night of the investigation, corroborated the most significant aspects of her testimony -- that he heard Defendant instruct someone on the phone to report the car stolen and that he was talking about an AK-47.  Moreover, defendant was present near the scene of the AK-47, he lied to the police, and he fled after the police told Melodee Sweeney he was a suspect.  As such, the trial's outcome was not likely affected by the prosecutor's comment.

### 2. Vouching

Defendant argues that the prosecutor improperly vouched for the government's case.  He claims that the prosecutor's rhetorical question on rebuttal, "Would you trust me to watch your kids," injected his personal integrity into the case, implying that even though they may not trust him with their children, the jurors could trust him--and, by extension, his witnesses--for purposes of the trial.  The government denies any impropriety, contending that the prosecutor merely demonstrated a flaw in the witness credibility assessment urged by the defense.

A prosecutor "'vouches for a witness when she places the prestige of her office behind the government's case by . . . imparting her personal belief in a witness's veracity . . . .'" United States v. Wilkerson, 411 F.3d 1, 8 (1st Cir. 2005) (quoting United States v. Perez-Ruiz, 353 F.3d 1, 9 (1st Cir.

2003)).  "When a prosecutor places the credibility of counsel at issue, the advantage lies solidly with the government, and thus, prosecutors are prohibited from doing so."  United States v. Joyner, 191 F.3d 47, 55 (1st Cir. 1999); but cf. United States v. Henderson, 320 F.3d 92, 105 (1st Cir. 2003) ("A prosecutor 'may attempt to persuade the jury to draw suggested inferences unfavorable to the defense, as long as the prosecutor's own opinion as to the witness' credibility is not urged on the jury.'" (quoting United States v. Smith, 982 F.2d 681, 683 (1st Cir. 1993))).  When, as here, a defendant fails to object at trial, the Court is especially disinclined to find improper meaning in a prosecutor's argument where there is an equally plausible alternative meaning.  United States v. Taylor, 54 F.3d 967, 979 (1st Cir. 1995); see also Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.").

The prosecutor's rhetorical question was not improper vouching, but rather an attempt to demonstrate a logical flaw in Defendant's position.  Defense counsel's closing noted pointedly the prior inconsistent statements and drug habits of two government witnesses, suggesting that, because the jurors would

not trust those witnesses with elements of their personal lives, they should not believe their testimony for purposes of trial. The government simply argued that the jurors likely would not trust anyone they did not know with their personal lives, but that that fact was irrelevant to evaluating a witness's credibility.  Immediately following that statement, the prosecutor urged the jurors to evaluate the credibility of Mr. Garofalo and Ms. Sweeney by examining their testimony and determining whether there was corroboration.  This comment did not put the prosecutor's personal credibility in issue, and does not furnish a basis for a new trial.

### ORDER

Defendant's Motion for a New Trial [Docket No. 53] is **DENIED**.

/S/ Patti B. Saris

PATTI B. SARIS
United States District Judge